IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZETI BROWN, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | No. _____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| SERENITY CARE KINGSTON LLC, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT AND JURY DEMAND**

**I.    PREMLIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff, Zeti Brown ("Plaintiff Brown"), a former employee of Defendant, Serenity Care Kingston LLC ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2. This action arises under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA").[1]

---

[1] Plaintiff Brown's claims under the PHRA are referenced herein for notice purposes. Plaintiff Brown must wait 1 full year from the date of dual-filing with the EEOC before initiating a lawsuit under the PHRA. Plaintiff Brown must, however, file her lawsuit under Title VII in advance of same because of the date of issuance of her federal Notice of Right to Sue. Plaintiff Brown's PHRA claims will mirror identically her federal claims under Title VII.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked, and venue is proper in this judicial district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff Brown's claims are substantively based on Title VII.

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Brown's claims arising under the PHRA.

5. All conditions precedent to the institution of this lawsuit have been fulfilled. On November 17, 2025, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission ("EEOC"), and this action has been filed within ninety (90) days of receipt of said notice.

6. Plaintiff Brown has satisfied all other jurisdictional prerequisites to the maintenance of this action.

## III. PARTIES

7. Plaintiff, Zeti Brown, is a forty-one (41) year old citizen of the Commonwealth of Pennsylvania, residing therein at 1629 Cedar Avenue, Scranton, Pennsylvania 18505.

8. Defendant, Serenity Care Kingston LLC, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania,

maintaining a place of business located at1 Keystone Place, Jessup, Pennsylvania 18434.

    9.    Defendant is an assisted living facility, providing both personal care and memory care in separate units within the facility.

    10.    At all times relevant hereto, the Defendant acted through its agents, servants, and employees, who acted within the scope of their authority, course of employment, and under the direct control of the Defendant.

    11.    At all times material herein, the Defendant has been a "person" and "employer" as defined under Title VII and the PHRA, and has been, and is, subject to the provisions of each said Act.

    12.    At all times material herein, Plaintiff Brown has been an "employee" as defined under Title VII and the PHRA and has been, and is, entitled to the protections of each said Act.

## IV.    STATEMENT OF FACTS

    13.    Plaintiff Brown is an adult, adhering to the Christian religious faith.

    14.    Plaintiff Brown was employed by the Defendant from on or about May 15, 2025 until on or about June 2, 2025, the date of her unlawful termination.

    15.    During the course of her employment, Plaintiff Brown served as a Dietary Cook and Manager.  In that capacity, Plaintiff Brown's duties included, but were not limited to, supervising a team of Cooks and Dietary Aides, food preparation, and cooking.

16.    Plaintiff Brown performed her job responsibilities as a Dietary Cook and Manager in a dutiful and competent manner.  As evidence thereof, Plaintiff Brown received regular praise and commendations from Defendant's management including, but not limited to, her immediate manager, Justine Sweeting ("Sweeting"), Administrator, as well as from countless residents at Defendant's facility.

17.     At all times relevant hereto, Plaintiff Brown's coworkers and managers knew that she was a devout Christian.

18.    Plaintiff Brown spoke openly about her Christian faith and her church at work, regularly sang Christian songs aloud while working, and used the religious affirmation "Amen" instead of "yes" in daily workplace conversations.

19.    Shortly after her hire, Jarmel (last name unknown) ("Jarmel"), Cook, embarked upon a campaign of harassment against Plaintiff Brown based on her Christian faith, thereby creating a religiously offensive and hostile work environment.

20.    By way of example, on a near daily basis, Jarmel mocked Plaintiff Brown's religion by calling her by the offensive moniker of "Church Girl."

21.    Additionally, Jarmel repeatedly sang over Plaintiff Brown's Christian songs with anti-Christian rap lyrics.

22. As further harassment, Jarmel interrogated Plaintiff Brown about her church and the name of the bishop leading her diocese. Jarmel additionally told Plaintiff Brown that pastors are "fake."

23. On another occasion, Jarmel accused Plaintiff Brown of being a "part-time Christian" after pressuring her to disclose how much she pays to her church in tithe.

24. Jarmel further challenged Plaintiff Brown's religious beliefs by stating that the Bible is "demonic."

25. On or about May 25, 2025, while working and singing a Christian song, Jarmel began to antagonize Plaintiff Brown once again by singing over Plaintiff Brown with anti-Christian rap lyrics.

26. Plaintiff Brown politely asked Jarmel to cease and desist, telling him that his conduct was inappropriate and offensive. Jarmel continued his harassment of Plaintiff Brown due to her religious beliefs.

27. In an attempt to diffuse the situation, Plaintiff Brown walked away and stepped outside for a few minutes, before coming back inside and returning to her work. Upon her return, Plaintiff Brown stated, "Let's be professional. Let's take religion off the table." In response, Jarmel shouted at Plaintiff Brown in a demeaning fashion, telling her to "grow up."

28. Following the aforesaid incident, Plaintiff Brown spoke to Joanne (last name unknown) ("Joanne"), Front Desk Associate, and asked to speak with Sweeting, advising that she wanted to make a report of religious harassment.

29. Joanne informed Plaintiff Brown that Sweeting was offsite and initiated a three (3) way call with Sweeting for Plaintiff Brown. During the said call, Plaintiff Brown recounted all of the aforesaid incidents in which Jarmel harassed Plaintiff Brown due to her religion, stated that his harassment was causing a hostile work environment, and requested that she intervene on Plaintiff Brown's behalf to stop the religiously offensive harassment.

30. Notwithstanding Plaintiff Brown's protestations, Sweeting failed to conduct an investigation and likewise failed to take steps to cause the harassment to cease.

31. In fact, Sweeting insinuated to Plaintiff Brown that she did not believe her allegations because she had never heard Jarmel speak in a discriminatory manner.

32. In retaliation for protesting unlawful religious harassment in the workplace, on June 2, 2025, the Defendant abruptly terminated Plaintiff Brown's employment under the guise that the company received complaints from residents and their family members about Plaintiff Brown.

33. Plaintiff Brown believes and avers that the Defendant's articulated reason for her termination is false and pretextual and that the Defendant actually

terminated her employment due to her religion and in retaliation for protesting unlawful religious harassment in the workplace.

34.   As evidence thereof, at no time prior to Plaintiff Brown's termination did Defendant ever inform her of any such complaints whatsoever. Nor did Plaintiff Brown ever receive a complaint directly from a resident or a family member.

35.   In fact, Defendant could not provide to Plaintiff Brown the name(s) of any individual(s) who registered complaints against her when asked.

36.   As further evidence of pretext, at no time prior to Plaintiff Brown's termination did the Defendant ever counsel or warn her regarding any alleged performance deficiencies despite having a progressive discipline policy and having issued progressive discipline to other similarly situated employees prior to termination.

### COUNT I
### (Title VII – Religious Discrimination, Hostile Work Environment, Retaliation)
### Plaintiff Brown v. the Defendant

37.   Plaintiff Brown incorporates by reference paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38.   The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff Brown to discrimination and a hostile work environment on the basis of her religion, and in retaliating against her for

protesting religious harassment in the workplace, ultimately resulting in the termination of her employment, constituted violations of Title VII.

39. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Brown sustained permanent and irreparable harm, resulting in her termination from employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

40. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Brown suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

41. Plaintiff Brown incorporates by reference paragraphs 1 through 40 of this Complaint as though fully set forth herein.

**WHEREFORE**, Plaintiff Brown requests that this Court enter judgment in her favor and against the Defendant, and Order that:

a. Defendant compensate Plaintiff Brown, reimburse Plaintiff Brown, and make Plaintiff Brown whole for any and all pay and benefits she would have received had it not been for Defendant's unlawful actions, as aforesaid, including,

but not limited to, back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

  b. Defendant pay to Plaintiff Brown punitive damages as permitted by applicable law, in an amount believed by the Court or the trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

  c. Defendant pay to Plaintiff Brown compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable;

  d. Defendant pay to Plaintiff Brown pre and post judgment interest, costs of suit, and attorney and expert witness fees as allowed by law; and

  e. The Court award such other relief as is deemed just and proper.

## **JURY DEMAND**

Plaintiff Brown demands trial by jury.

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

By:   _____
       Ari R. Karpf, Esq. (91538)
       Traci M. Greenberg, Esq. (86396)
       8 Interplex Drive, Suite 210
       Feasterville-Trevose, PA 19053
       (215) 639-0801
       akarpf@karpf-law.com
       tgreenberg@karpf-law.com

Dated: January 6, 2026

## **VERIFICATION**

The undersigned states that the facts in the foregoing Complaint and Jury Demand are true and correct to the best of her knowledge, information and belief. The undersigned understands that any intentionally false statements herein are subject to criminal penalties relating to sworn and unsworn statements.

Dated: 12/29/2025

_____
Zeti Brown